# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CHERI WILKINS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) JURY DEMAND |
| **KOCH FOODS OF GADSDEN LLC, AND ALLIED** | ) |
| **UNIVERSAL SECURITY, and JEREMY HARP** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

COMES NOW the Plaintiff, CHERI WILKINS, and files this Complaint to be answered by the Defendants pursuant to the Federal Rules of Civil Procedure.

**I.    JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), and venue is proper pursuant to 28 U.S.C. §1391 (all parties are located within the Northern District of Alabama, and the acts complained of took place in the Northern District of Alabama, Middle Division).

2. This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended by the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.* The jurisdiction of this Court is

invoked to secure protection of and redress the deprivation of rights secured by 42 U.S.C. §2000e *et seq.* providing for relief against sexual harassment.

3. Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims of outrage, assault and battery, invasion of privacy, false imprisonment, and negligent and/or wanton and malicious training, supervision, and retention, because all such claims arise from a "common nucleus of operative fact."

4. The Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, the "Civil Rights Act of 1991", 42 U.S.C. §2000e *et seq.*

5. The Plaintiff timely filed her charges of discrimination within 180 days of occurrence of the last discriminatory act. (See Charge of Discrimination attached hereto as Exhibit "A").

6. The Plaintiff timely filed her lawsuit within 90 days of her receipt of her "Right –to-Sue" letter from the EEOC. (The Right to Sue Letter is attached hereto as Exhibit "B").

## II. PARTIES

7. The Plaintiff, Cheri Wilkins (hereinafter "Wilkins"), is over the age of nineteen, is a citizen of the United States and was a resident of the Northern District of Alabama Middle Division at all times material to the Complaint.

8. The Defendant, Koch Foods of Gadsden, LLC (Koch Foods), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. 2000e *et seq.*, and is located in and conducts business in the Northern District of Alabama, Middle Division.

9. The Defendant, Allied Universal Security (Allied), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. 2000e *et seq.* and is located in and conducts business in the Northern District of Alabama, Middle Division.

10. The Defendants Koch Foods and Allied each employ at least fifteen (15) persons.

11. The Defendant, Jeremy Harp is over the age of 19, is a resident in the Northern District of Alabama, Middle Division, and at all material times hereto was employed by the Defendant.

### III. FACTUAL ALLEGATIONS

12. At all times material to this complaint, Wilkins was employed by Allied Universal as a security guard.

13. At all times material to this complaint, Wilkins was assigned to work at Koch Food.

14. In April, 2020, Wilkins worked in the guard booth.

15. No one other than security personnel was allowed in the guard booths.

16. Jeremy Harp approached Wilkins while she was working in the guard booth at the main gate.

17. Jeremy Harp looked Wilkins up and down in a sexually suggestive manner.

18. Clarence, another guard, asked Jeremy Harp "What are you doing here? What do you want?"

19. Jeremy Harp asked Clarence when he got the new guard--talking about Wilkins.

20. Wilkins felt the interaction was creepy.

21. That same day, Wilkins was moved to another gate.

22. This second assignment was located at a dead end.

23. After about one hour of her arrival at the other gate, Jeremy Harp pulled up to the guard booth, got out of the car, and walked into the booth.

24. Wilkins Allied Universal Supervisor, Richard Stevens, asked Jeremy Harp, "What are you doing here?" because he is not allowed in the guard booth.

25. Jeremy Harp made small talk to Mr. Stevens.

26. Mr. Stevens received a call over the radio and left.

27. Mr. Stevens did not ask Jeremy Harp to leave the guard booth.

28. Mr. Stevens did not lock Wilkins in the booth by herself.

29. Wilkins told Jeremy Harp he could not be in the booth and asked him to leave.

30. Jeremy Harp did not leave, instead, he asked Wilkins if she drove a silver car.

31. Upon Wilkins objection to his presence in the booth, Jeremy Harp walked up to Wilkins, put his arm around her, then mashed his hand on her breast, and said, "It's not like I'm hitting on you."

32. Wilkins freaked out, pushed Jeremy Harp out of the guard booth, shut the door, and locked herself in.

33. Jeremy Harp did not want to leave.

34. Another guard, Burt, came to the booth, and Jeremy Harp got in his car and drove off.

35. Wilkins immediately told Burt what happened.

36. Wilkins spoke with Jeremy Harp's supervisor about what happened, and told him she was going to Human Resources.

37. Jeremy Harps supervisor told Wilkins not to go to Human Resources stating he would handle it.

38. Wilkins called her head supervisor Simone Taylor, and Human Resources and reported the incident.

39. Wilkins learned (from an employee at Koch Foods) that this was not the first time Jeremy Harp had put his hands on another woman.

40. The employee told Wilkins that Jeremy Harp should have been fired a long time ago, but he was only written up.

41. Koch Foods has a zero tolerance policy relating to sexual harassment.

42. Had Jeremy Harp been fired pursuant to Koch Foods policy Wilkins would not have been sexually assaulted.

43. No one from Koch Foods or Allied Universal Human Resources or management ever called Wilkins back to let her know what was going on.

44. Wilkins learned (from an employee at Koch Foods) Jeremy Harp was still working at Koch Foods so she did not return out of fear of being sexually assaulted again.

## IV. CLAIMS

### COUNT I-SEXUAL HARASSMENT-HOSTILE WORK ENVIRONMENT
(against the Defendants Koch Foods and Allied)

45. The Plaintiff, Wilkins, was subjected to a sexual hostile work environment by Jeremy Harp.

46. The nature of the comments made and actions of Jeremy Harp was severe as he sexually assaulted Wilkins.

47. Wilkins did not welcome the offensive acts and statements made by Jeremy Harp and even asked him to leave.

48. The offensive acts and statements were so severe and pervasive that they materially altered the terms and conditions of Wilkins' employment as Wilkins was too terrified to return to the job and was unable to perform her job duties.

49. A reasonable person would have found the offensive acts or statements materially altered the terms and conditions of her employment and work performance.

50. Jeremy Harp's prior sexual harassment toward women was well known within Koch Foods and Allied, but he was not previously terminated pursuant to the zero tolerance policy, thus Koch Foods and Allied ratified his conduct and a hostile work environment was created.

51. As a proximate cause and cause-in-fact of said harmful or offensive sexual harassment Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost benefits, lost retirement, and retaliation.

## COUNT II- CONSTRUCTIVE DISCHARGE
### (against the Defendant Koch Foods and Allied)

52. Wilkins was subjected to intolerable and illegal comments and acts as stated in paragraphs 15-20 and 23-34 rising to the level of a hostile work environment.

53. The Defendants, Koch Foods and Allied, knew or should have known of said conduct; yet failed to take appropriate actions to stop the harassment.

54. After Wilkins privacy was invaded, sexually harassed, and she was sexually assaulted, she did not return back to work.

55. The sexual assault, sexual harassment and invasion of privacy by Jeremy Harp, the failure of Koch Foods and Allied to secure the guard booth, the failure of Koch Foods or Allied to follow their own zero tolerance policy for Jeremy Harp's prior conduct of placing his hands on women, and their failure to terminate Jeremy Harp caused Wilkins to fear going to work and being sexually assaulted again -causing working conditions to become so intolerable that a reasonable person in her position would have felt compelled to resign.

56. As a proximate cause and cause-in-fact of said harmful or offensive sexual harassment, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost benefits, and loss of career, and lost retirement.

## COUNT III-ASSAULT AND BATTERY
(against the Defendants Koch Foods, Allied and Harp)

57. Due to Jeremy Harp's conduct stated in paragraphs 15-20 and 23-34 Wilkins was in fear of imminent battery, and battered.

58. Wilkins told Jeremy Harp to leave but he refused.

59. Jeremy Harp had intent to offensively touch Wilkins because he refused to leave the guard booth, he walked over to her, put his arm around her, mashed his hand on her breast, then told her, "It's not like I am hitting on you".

60. Jeremy Harp offensively touched Wilkins when he put his arm around her, mashed his hand on her breast and told her, "It's not like I am hitting on you". .

61. Jeremy Harp was the agent of Defendant Koch Foods and Allied and/or they ratified his conduct.

62. The Defendants, Koch Foods and Allied, knew or should have known of said conduct; yet failed to take appropriate actions to stop the harassment.

63. As a proximate cause and cause-in-fact of said harmful or offensive assault and battery by Harp, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost benefits, lost retirement, and retaliation.

## COUNT IV- INVASION OF PRIVACY
### (Against the Defendant Allied and Harp)

64. Wilkins worked security in the guard booth.

65. No one other than security personnel were allowed in the guard booth.

66. Jeremy Harp came into the guard booth uninvited.

67. Jeremy Harp was asked to leave the guard booth.

68. Wilkins did not consent to Jeremy Harp being in the guard booth.

69. Jeremy Harp refused to leave the guard booth, and instead sexually assaulted Wilkins.

70. Wilkins Allied Supervisor asked Harp what he was dong there, but did not require Jeremy Harp to leave in violation of policy, thus he ratified the conduct of Jeremy Harp.

71. As a proximate cause and cause-in-fact of said harmful or offensive intrusion of Wilkins seclusion by Harp, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost benefits, lost retirement, and retaliation.

## COUNT VI-OUTRAGE
### (against the Defendants, Koch Foods, Allied and Harp)

72. The conduct of Jeremy Harp, stated in paragraphs 15-20 and 23-34 was extreme and outrageous and was beyond the bounds of normal decency.

73. The Defendants, Koch Foods and Allied, knew or should have known of said conduct; yet failed to take appropriate actions to stop the harassment.

74. Defendant Jeremy Harp was the agent of Defendant Koch Foods, and Allied and/or Koch Foods and Allied ratified his conduct by having knowledge of his prior behavior toward women, by not terminating him for prior behavior toward women, and/or for allowing his continued conduct to result in Wilkins sexual assault, sexual harassment, and invasion of privacy.

75. As a proximate cause and cause-in-fact of said harmful or offensive sexual harassment by a Harp, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost benefits, loss of career, and lost retirement.

## COUNT VII- NEGLIGENT SUPERVISION AND RETENTION/FAILURE TO WARN (against the Defendants Koch Foods and Allied)

76. The Defendant Koch Foods was negligent in training, supervising and retaining Jeremy Harp in it they knew, or in the exercise of reasonable care should have known, that Jeremy Harp was engaging in sexual harassment and sexual assault against women, and eventually the Plaintiff as described in paragraphs 15-20 and 23-34.

77. The Defendant Koch Foods was negligent in failing to warn the Plaintiff Stockdale of Jeremy Harp actual behavior toward women, that he was dangerous, and that she should never be alone with him.

78. The Defendant Koch Foods was negligent in training, supervising and retaining its Human Resources personnel for only writing up Jeremy Harp for his sexual assaults of women in violation of its zero tolerance policy.

79. The Defendant Allied was negligent in failing to train it's supervisor, Richard Stevens to not allow anyone inside the guard booth or not to require anyone to leave the guard booth.

80. The Defendants, in breach of their duties and obligations concerning the matters alleged in this Complaint, negligently:

 a.  Failed to take any corrective actions to stop Jeremy Harp from sexually harassing or assaulting women, and eventually, the Plaintiff;

 b.  Failed to terminate Jeremy Harp for his prior improper conduct;

 c.  Failure to discipline Richard Stevens for leaving Wilkins alone in the guard booth with Wilkins;

 d.  Failed to preclude Jeremy Harp from the guard booth;

 e.  Failed to otherwise act with due care;

 d.  Failed to warn Wilkins of the dangerous propensities of Jeremy Harp, that she should never be alone with him.

81. As a proximate cause and cause-in-fact of said negligence, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame,

humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost career, and lost retirement.

## COUNT VIII - WANTON SUPERVISION AND RETENTION/FAILURE TO WARN (against the Defendant, Koch Foods and Allied)

82. The Defendant Vulcan was wanton in supervising, training and retaining Jeremy Harp in that they knew or, in the exercise of reasonable care, should have known, that Jeremy Harp was engaging in sexual harassment and sexual assaults against women, and eventually, the Plaintiff as described in paragraphs 15-20 and 23-34.

83. The Defendants and other employees knew or, in the exercise of reasonable care, should have known, that if the complaints of sexual harassment were not investigated, supervised, and the conduct stopped, that said Defendant(s) would continue to engage in devious sexual activities.

84. In addition, the Defendants, in breach of their duties and obligations concerning the matters alleged in this Complaint, wantonly:

   a. Failed to take any corrective actions to stop Jeremy Harp from sexually harassing and sexually assaulting women and eventually, the Plaintiff;

   b. Failed to terminate Jeremy Harp for his improper conduct;

c. Failure to discipline Richard Stevens for leaving Wilkins alone in the guard booth with Wilkins;

d. Failed to preclude Jeremy Harp from the guard booth;

e. Failed to otherwise act with due care;

d. Failed to warn Wilkins of the dangerous propensities of Jeremy Harp, that she should never be alone with him.

85. As a proximate cause and cause-in-fact of said harmful or offensive sexual harassment by a supervisor/lead, Wilkins was caused to suffer the following injuries and damages: fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, termination, loss of wages, lost career, and lost retirement.

## V. DAMAGES

86. The plaintiff has suffered fear, depression, shame, humiliation, embarrassment, loss of sleep, crying, stress, emotional distress, pain, suffering, and termination, loss of wages, lost career and lost retirement.

## VI. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.  Enter an Order requiring the defendant to make the plaintiff whole by awarding her compensatory and punitive damages including, but not limited to: lost wages ( back and future plus interest), out of pocket expenses, emotional distress, loss of benefits, including retirement, pension, seniority, and other benefits of employment.

2.  The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

*Patricia A. Gill*
/s/ Patricia A. Gill
Patricia A. Gill
GIL047
Attorney for Plaintiff

OF COUNSEL:
PATRICIA A. GILL, P.C.
PO Box 55304
Birmingham, AL 35255
Phone : (205) 789-1906
Facsimile: (205) 930-9800
E-Mail: patriciagill@yahoo.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

Koch Foods of Gadsden, LLC
Care of Registered Agent, CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Allied Universal
2700 US 280 S Suite 305
Mountain Brook, AL 25223

Jeremy Harp
3810 W. Meighan Blvd.
Gadsden, AL 35094